SHARP et al. v. NATIONAL BISCUIT COMPANY, Appellant.

Division One, February 10, 1904.

1. **Negligence:** DEATH OF CHILD: TRESPASSER ON WAGON. Plaintiff's evidence showed that their child, five years old, was on the step of a heavy bread wagon, that the driver knew it and said to him, "Get off or I will knock you off," and that the child answered, "Wait a minute and I will," but that instead of waiting the driver immediately started the team and cut back once or twice at the child with his whip, and that the child dodged the blow and fell and was run over and killed. Defendant's evidence was that the child got on the step after the driver got on the wagon, that the driver did not know he was there, and that by reason of the construction of the wagon and the hood over the driver's seat he could not see the child, and that he did not say anything to the child and did not strike at him. *Held*, that the instructions being proper, it was for the jury to say, in view of this conflicting evidence, whether or not the parents of the child should recover damages for its death from the company that had the driver employed.

2. ———: ———: MEASURE OF DAMAGES: EARNING CAPACITY. The damages which the parents are entitled under the statute to recover for the negligent killing of their son are such sum as the jury may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parents who are entitled to sue, having regard to the mitigating or aggravating circumstances attending the death.

of the child; and such necessary injury includes the loss of the comfort, society and love of the child, and may or may not include the loss of the services of the child until he attains his majority, minus the cost of support and education, as the party entitled to sue is or is not entitled to such earnings, and is or is not under obligation to support and educate the child.

3. ———: ———: ———: OBJECTION BY DEFENDANT. The defendant can not on appeal object that the instruction given for plaintiff on the measure of damages omitted some elements of damages.

4. Jury in Civil Cases: AMENDMENT SELF-ENFORCING. The amendment of 1900 to the Constitution authorizing three-fourths of the jury in civil cases in courts of record to render a verdict, is self-enforcing, and no legislative action is needed to make it effective.

Appeal ·from Jackson Circuit Court.—*Hon. Edw. P. Gates,* Judge.

AFFIRMED.

*Harkless, O'Grady & Crysler* for appellant.

(1) The amendment to the Constitution allowing a two-thirds majority of the jury of twelve to return a verdict in civil cases, even though properly submitted to the voters of the State, and even though properly adopted by the people of the State, was and is not self-enforcing; and until the same was enforced by appropriate legislation of the State it was not effective, and therefore defendant was deprived of its constitutional right of a unanimous verdict of twelve jurors as theretofore enjoyed under the Constitution and practice of the State. (2) Defendant owed the child in question no duty except not to intentionally, willfully or knowingly injure it and unless defendant through its servants knew that the child was in a place of danger and failed to exercise care thereafter, no liability exists as against the defendant, and the evidence fails to show that the servant of defendant had any knowledge of the dangerous position of the child prior to the injury. Barney v. Railroad,

126 Mo. 372; Wencker v. Railroad, 169 Mo. 592; Hitle v. Stifel, 126 Mo. 295. (3) But in any event plaintiffs could not have recovered anything other than nominal damages, for there was no evidence whatever of the value of services of the child, or of its cost of maintenance, education, clothing or schooling, and there was no evidence as to the age of either of the parents, and nothing upon which the jury could have based a verdict. Dunn v. Railroad, 21 Mo. App. 204. (4) The court erred in giving the instruction as to the measure of damages. Hennessy v. Bavarian Brewing Co., 145 Mo. 104.

*Latshaw & Latshaw* and *S. S. Gunlack* for respondents.

(1) There was evidence, and plenty of it, and good evidence from disinterested parties, to the fact that the driver did see the little boy on the step and in a position of danger; that he started the wagon up after he knew the boy was there; that he failed, when the little boy asked him to, to let him off; that instead of so doing, he lashed round with his whip once or twice; that the little boy dodged the blow, fell under the wagon, and was run over and killed. This clearly takes the case outside of the authorities cited by appellant and puts it clearly within the lines of the case of Emmons v. Quade, 75 S. W. 103. (2) The next point raised by appellant is that the measure of damages as set forth in plaintiff's instruction number one is not the proper measure of damages. That the case of Hennessy v. Bavarian Brewing Co., 145 Mo. 104, declares a different measure of damages—at variance with the law theretofore existing in this State upon that subject. In reply to this contention we desire to be understood as saying, first, that the court did not decide nor attempt to decide the question of the measure of damages in the Hennessy case; second, that this question was not at any time before the court, directly or indirectly, in the Hennessy

case; third that the court did not mean, even as *dictum*, what appellant claims it did mean in the Hennessy case; fourth, that since the Hennessy case was decided, the point here in controversy has been decided adversely to appellant's contention by this court in Geismann v. Elec. Co., 73 S. W. 657, and by the Court of Appeals in Stumbo v. Zinc Co., 75 S. W. 185. The only question before the court in the Hennessy case, which even remotely touched the question now under consideration, was, "who are the proper parties plaintiff" in a case where the father is dead and the mother has remarried. Parsons v. Railroad, 94 Mo. 286; Hickman v. Railroad, 22 Mo. App. 344; Knight v. Co., 75 Mo. App. 541; Leahy v. Davis, 121 Mo. 227; Franke v. St. Louis, 110 Mo. 517; Stoker v. Railroad, 91 Mo. 509; Nagle v. Railroad, 75 Mo. 653; McKinley v. Co., 80 Mo. App. 93; Sutherland on Damages (2 Ed.), secs. 1272-1275; Shearman & Redfield on Neg., sec. 763; Sedgwick on Damages (8 Ed.), sec. 573; Chicago v. Kiefe, 114 Ill. 222; Benton v. Railroad, 55 Ia. 496; Railroad v. Bautown, 54 Pa. St. 495; Railroad v. Freeman. 36 Ark. 41; Munro v. P. C. D. & P. Co., 84 Col. 515; Mayhew v. Brouts, 103 Ind. 328; Ewen v. Chicago, etc., 38 Wis. 13; Vicksburg v. McLain, 67 Miss. 4; Drew v. Railroad, 26 N. Y. 49; State v. Railroad, 24 Md. 107; Railroad v. Dundren, 37 Kan. 1.

MARSHALL, J.—This is an action, under the statute, for damages, caused to the plaintiffs by the death of their infant son, George Calvin Sharp, five years of age, by being run over by one of defendant's wagons, on July 18, 1899, on Sixth street, between McGee and Oak streets, in Kansas City. The plaintiffs recovered a judgment for fifteen hundred dollars, and the defendant appealed.

The negligence charged in the petition is that the driver of the wagon compelled the child to jump from the wagon, and in consequence he was run over and killed. The answer is a general denial, with special pleas of

contributory negligence of the child, and of the parents, the plaintiffs, in allowing the child to be on the street, and of trespass by the child upon the defendant's wagon. The reply is a general denial.

## I.

The accident occurred on July 18, 1899, on Sixth street, near Oak street, and nearly in front of the stores of High and Lutz. The wagon was a heavy bread wagon. The body of the wagon was raised about three feet above the ground, and had doors on each side, with steps extending toward the ground. The driver's seat was near the front and had a hood over it, with glass windows on each side. The driver was delivering bread and stopped in front of the stores aforesaid. Sixth street runs east and west, and he stopped his wagon on the south side of the street, with the team fronting west. He was in the stores quite a while, and while there, a number of boys were climbing on the wagon. Some neighbors ordered the boys to get off, which they did, but afterwards climbed on it again. When the driver came out of one of the stores to go into another, he saw the boys on the wagon and he said to one of them, Freddie Lutz, "Get off or I will kick you off." The driver knew that the boys were in the habit of climbing on the wagon and the testimony for the defendant is that he carried a whip to drive the bigger boys off of the wagon, but he did not use it on the small boys. When the driver came out of the store he got on the wagon and drove off. When he had gotten about ten steps the deceased fell off of the wagon and was run over. The evidence is conflicting as to whether the deceased was on the step on the north side of the wagon at the time the driver got on the wagon, or whether he got on the step after the driver got on the wagon. It is also conflicting as to whether the driver knew that the deceased was on the step or not. The evidence on behalf of the

plaintiff is that the child was on the step and that the driver knew it, and said to him, ''Get off or I will knock you off,'' and that the child answered, ''Wait a minute and I will,'' but that instead of waiting, the driver immediately started the team and cut back once or twice with the whip at the child, and that the child dodged the blow and fell. The evidence for the defendant is that the child got on the step after the driver got on the wagon, and that the driver did not know he was there, and by reason of the construction of the wagon and the hood over the driver's seat he could not see the child, and that he did not say anything to the child and that he did not strike at him. The defendant's evidence is conflicting as to whether he had a whip that day. By consent of the parties the wagon was brought to the court house and the jury permitted to examine it, and to test whether the driver could see the child on the step or not.

There was likewise a sharp conflict in the evidence as to whether the parents permitted the child to play in the street, and as to his proclivity to climb upon wagons. Nine witnesses testified for the plaintiffs, and thirteen for the defendant, exclusive of character witnesses. Most of them were eyewitnesses to the accident. Their testimony is as conflicting as it is possible for testimony to be. To draw it mildly, somebody was *mistaken*. The jury believed the plaintiff's witnesses. Under such circumstances their finding of fact is conclusive on this court. [James v. Insurance Co., 148 Mo. 1.]

## II.

The defendant contends that the plaintiffs' instruction as to the measure of damages is erroneous, and bases the contention upon Hennessy v. Bavarian Brewing Co., 145 Mo. 104, which defendant says changed the law in this State.

The instruction told the jury that the measure of the plaintiffs' damages was what their son would have

earned until he became twenty-one years old, minus the cost of his support, maintenance and clothes. It is claimed that the logic of Hennessy v. Bavarian Brewing Co., supra, is that this is not the proper measure of damages, but that the true rule is stated in Nagel v. Railroad, 75 Mo. l. c. 665, such amount as the jury deem fair and just. The language of the statute (sec. 2866, R. S. 1899) which transmits the right to the parents in such cases, is, that, ''the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default.''

The case of Hennessy v. Bavarian Brewing Co., supra, did not involve the question of the measure of damages at all. The only question involved or decided in that case was, who is entitled to maintain an action under the statute for the death of a child under age? In that case, the mother of the child brought the suit. The child's father was dead and the mother had married again, and the step-father had admitted the child into the family. It was contended that the mother could not sue because the step-father was entitled to the earnings of the child, and the step-father could not sue, because he was given no such right at common law or by the statute. It was held that the mother was entitled to sue, because the statute expressly conferred the right, and this too even if she was not entitled to the child's earnings. The fact was referred to that some cases, under statutes like ours, held that the measure of damages is the loss of services of the child, minus the expense of maintenance, plus the expense of medical attendance during the child's last illness and of the funeral, but it was said that such considerations do not determine who can maintain the action, and the case of Parsons v. Railroad, 94 Mo. l. c. 296, was cited, wherein

this court, per BRACE, J., held that the right is a transmitted right and does not depend upon the question of loss of services.

But whilst this is true and while it is likewise true that in the cases of Nagel v. Railroad, 75 Mo. 1. c. 665, and in Geismann v. Electric Co., 173 Mo. 654, this court approved instructions which were couched in the general language of the statute, and which made no reference to loss of services, it does not follow that the defendant is entitled to a reversal of this case because of the character of the instruction complained of.

The statute permits a recovery of "such damages as the jury deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who are entitled to sue."

The court at the request of the plaintiff limited the damages in this case to the loss of the services less the support of the child, and at the request of the defendant excluded anything for wounded feelings or grief.

"The necessary injury" referred to in the statute may or may not include the net loss of services, but it also covers other injuries besides loss of services. It includes loss of the comfort, society and love of the child. In this case, the parents lost both, and were entitled to compensation for both. The instruction limited their recovery to the first. It, therefore, favored the defendant to that extent, and hence the defendant can not complain.

The Hennessy case did not change the law in this State. What is therein said and the logic of the decision is strictly in line with the rule as to the measure of damages laid down in Nagel v. Railroad, 75 Mo. 1. c. 665; Parsons v. Railroad, 94 Mo. 1. c. 296, and Geismann v. Electric Co., 173 Mo. 654. This case was tried below upon a more limited or restricted right in the plaintiff, but as it was more beneficial to the defendant than the rule laid down in the cases cited, the defendant can not complain.

The cases cited also dispose of the defendant's sub-contention under this head, that there was no proof of the earning capacity of the child nor of the ages of the parents, for they hold that proof of that character is unnecessary, that it would be mere matter of opinion, and that the jury would have to fix the amount anyway.

## III.

The defendant's eighth and tenth instructions were properly refused. The eighth, because it was a comment upon the evidence in only one particular and that a matter of dispute, and the tenth, because there was abundant evidence to take the case to the jury upon the question of whether the driver compelled the child to jump off of the wagon to avoid being struck by the whip.

## IV.

The defendant's other contention is that the amendment to the Constitution allowing nine of a jury to return a verdict is not self-enforcing, and as the Legislature has not enacted any law carrying it into effect, it is inoperative.

The amendment changed section 28 of article 2 of the Constitution so as to make it read: "The right of trial by jury, as heretofore enjoyed, shall remain inviolate, but a jury for the trial of civil and criminal cases in courts not of record, may consist of less than twelve men as may be prescribed by law; and that a two-thirds majority of such number prescribed by law concurring may render a verdict in all civil cases; and that in the trial by jury of all civil cases in courts of record three-fourths of the members of the jury concurring may render a verdict. Hereafter a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or true bill." [Laws 1899, p. 382.]

The difference between self-enforcing constitutional

provisions and those requiring legislation to make them effective, is clearly illustrated by this amendment. Permission is given therein to the General Assembly to enact a law, under which a jury in a court not of record may consist of less than twelve men, two-thirds of whom may render a verdict. But as to the courts of record in civil cases, three-fourths of the jury are authorized to render a verdict, and three-fourths of a grand jury are given the right to return an indictment. No legislative action is needed as to the latter classes. A law passed by the Legislature could not confer any more right than is expressly conferred by the amendment, and the fact that as to juries in courts not of record, legislative action is expressly required, while in courts of record no such action is called for, is the surest and most convincing argument that no legislative action was intended as to the latter.

In Fusz v. Spaunhorst, 67 Mo. 256, this court had before it section 27 of article 12 of the Constitution, which makes it a crime, "the nature and punishment of which shall be prescribed by law," for any officer of a banking institution to receive deposits after he knows it is insolvent, and which makes any such officer individually responsible civilly for such deposits, and it was there said: "The cases are exceptional where constitutional provisions enforce themselves; ordinarily the labors of the convention have to be supplemented by legislation before becoming operative. Of course if it be evident from the terms employed in any particular provision of the organic law, that it shall go into force forthwith, without awaiting ancillary legislation, it will become an imperative judicial duty to thus declare." Accordingly it was held that the whole section was not self-enforcing.

Thereafter in Cummings v. Winn, 89 Mo. 1. c. 56, the question again came before this court and the decision in the Spaunhorst case was referred to, and it was unanimously held that the first portion of the section

that made it a crime, ''the nature and punishment of which shall be prescribed by law,'' was clearly not self-enforcing, but needed legislative action to prescribe the nature and punishment of the offense, but that the latter provision of the section, which made such officer civilly liable for such deposits, was self-enforcing and needed no legislative aid.   [Consult, also, State v. Sattley, 131 Mo. l. c. 483.]

The general rule as to whether the provisions of the Constitution are self-enforcing is thus stated in 6 Am. and Eng. Ency. Law (2 Ed.), p. 912:  ''Constitutional provisions are self-executing where there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given or the enforcement of a duty imposed. . . . In case a contitutional provision is ambiguous and the words employed do not plainly evince an intention that the provision is to be self-executing, the court in construing it will resort to other aids than the mere language employed.''

Judge COOLEY states the rule to be:  ''A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.''   [Cooley's Const. Lim. (7 Ed.), p. 121.]

Without pursuing the subject further, it is plain that section 28 of article 2 of the Constitution, as amended, is self-executing so far as it applies to juries in civil cases in courts of record, and so far as it applies to grand juries, but that it is not self-executing so far as it applies to juries in courts not of record.

Under this conclusion the contention of the defendant in this regard is not well taken.

The result necessarily follows that the judgment of the circuit court must be affirmed. It is so ordered. All concur.