Wood v. City of Omaha.

---

ISAAC A. WOOD, ADMINISTRATOR, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED JUNE 10, 1910. No. 15,968.

1. Municipal Corporations: DEFECTIVE SIDEWALKS: INJURY: NOTICE. In an action against a city for damages caused by a defect in a sidewalk, in which the evidence received without objection tends to prove that the walk upon which the accident occurred on a given street along an entire block is decayed and in a condition dangerous to persons passing over it, and that the city authorities had notice of the general condition of the walk, it is not necessary to prove notice to the city of the condition of the walk at the particular point where the accident occurred.

2. ———: ———: Notice: Instructions.  Under the statute governing cities of the metropolitan class, prior to the recent statute requiring written notice, such city was not chargeable with negligence in not repairing defective walks without notice for a sufficient time to make repairs, unless the defect had existed so long as to imply notice.  But it is not prejudicial error to instruct the jury that to hold the city liable it must be found that it had notice "at the time of the injury" if in a preceding instruction the rule is correctly and completely stated.

3. Appeal: Waiver of Error.  Errors, if any, in receiving incompetent evidence are presumed to have been waived unless objected to when the evidence is offered.

4. Instructions examined, and found not prejudicially erroneous as applied to the evidence in the case.

Appeal from the district court for Douglas county: George A. Day, Judge.  *Affirmed.*

*Harry E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*John O. Yeiser, contra.*

Sedgwick, J.

In 1904 Mrs. Mary A. Eddy accidentally fell on the walk on a public street in the city of Omaha and was severely injured, so that afterwards as a result of this injury, as it is alleged in the petition, Mrs. Eddy died. The plaintiff, as the administrator of her estate, brought this action against the city to recover damages.  From the judgment in his favor in the district court the city has appealed.

1. The first controverted matter relates to the character of the alleged defect in the walk.  The plaintiff contends that the entire walk along the south side of Harney street from Forty-second to Forty-third street was defective and dangerous.  This action, he says, was begun and he presents the case upon that theory.  The brief of the defendant presents a case in which the contention relates to a particular point in the walk.  Was there a

broken or loose plank where the accident occurred? Did
the city have due notice of the defect and proper oppor-
tunity to remedy it? It is from this point of view that
the defendant's case has been investigated and is now
presented. Neither view seems to be definitely presented
by the pleadings. The allegations of the petition would
seem in some degree at least to justify defendant's theory
of the issues being controverted. After the general alle-
gation that the walk from Forty-second to Forty-third
street was defective and dangerous, and that defendant
had knowledge of its condition for more than ten days
before the injury, it is alleged that the deceased stepped
upon a board which was "unavoidably tilted up by
her son's stepping on a loose board of such sidewalk
which was broken between the stringers, * * * and
said particular board would have been discovered to be
so broken and would have been replaced and repaired if
the said generally defective sidewalk had been repaired."
The defendant now contends that the allegation is that
the broken board caused the injury, and that there is no
evidence that the city had notice of this defect. Constru-
ing the petition, as the law requires, more strictly against
the pleader, there would be ground for defendant's con-
tention if it had been timely presented to the court. There
was no motion to make the petition more definite and
certain. The answer, so far as it relates to this conten-
tion, was a general denial. The plaintiff by his first wit-
ness introduced evidence tending to show the defective
condition of the entire walk from Forty-second to Forty-
third street. This evidence was received without objec-
tion, and was thoroughly canvassed by defendant upon
cross-examination. It may therefore be considered that
this case was tried in the district court upon the plain-
tiff's contention that this entire block of the walk in
question was in a dangerous condition.

The witness above referred to lived on Harney street
between Forty-second and Forty-third streets and had
lived in Omaha for 15 years. At the time of the accident

the deceased and her son were living at the house of this witness. He testified that he knew the condition of the walk thoroughly and that it was "exceedingly poor from Forty-second to Forty-third street"; that at different places the stringers had rotted away, leaving the boards practically without proper support; that the boards themselves were not sound; that many of them were rotted in places, and there was not one of these boards, if supported at each end, "but what would have broken in the middle if you stepped on it," and that this was the general condition of the entire walk, and that about two weeks before the accident he went to the city hall and notified Mr. Coburn at the city office of the condition of the walk between Forty-second and Forty-third streets; that Mr. Coburn had charge of the sidewalk, and then promised the witness to see that it was put in shape. There is other evidence of the same general nature in the record, and, if believed by the jury, would abundantly establish the negligence of the city in allowing the walk for an entire block upon a prominent street to become and remain in such a condition. Upon the trial of such an issue as this, the contention of the defendant that the city was not notified that the particular plank that caused the accident was loose or broken would be without merit. It is not at all analogous to *Nothdurft v. City of Lincoln*, 66 Neb. 434, and similar cases, in which it was complained that a certain plank or planks had become loose or defective.

2. The next error asserted and particularly assigned in the brief as the statute requires is that the court erred in admitting in evidence certain exhibits, numbered 2 and 4. These were notices by the board of public works of the city to certain property owners, notifying them that the sidewalk in front of their respective premises on the south side of Harney street was defective and in a dangerous condition, and requiring them to repair the same or construct a new walk in place thereof. These notices were served in the preceding year. No. 2 specified

the sidewalk between Forty-second and Forty-fourth streets, and No. 4 the walk "west of 42d street." The objection to these exhibits was that they failed to specify the particular spot at which the accident occurred. These notices tend to show that the city authorities had knowledge of the condition of this walk from Forty-second to Forty-third streets, which was, as we have seen, the principal matter under controversy, and we think that they were properly received in evidence. Other similar objections are unavailable for the same reasons.

3. It is also contended in the brief that "the city had no notice and was not chargeable with knowledge of the alleged decayed condition of the stringers at the place where the accident occurred." This objection is partly predicated upon the contention that the inquiry should be confined to the particular point where the accident occurred. This phase of the objection has already been sufficiently answered. The remaining argument upon this point appears to relate to the sufficiency of the evidence to establish notice to the city, but the evidence amply justified the finding of the jury in that regard.

4. The defendant complains of instruction No. 6, given by the court, which is as follows: "Under its charter and under the law, it is the duty of the defendant to exercise ordinary care to keep its sidewalks, including the one in question, in a reasonably safe condition for use in the ordinary modes used by pedestrians, and it is liable to the plaintiff for any damages, if any were sustained by him, by reason of the death of Mary A. Eddy resulting from the negligence of the defendant to perform that duty, unless you find that said Mary A. Eddy was guilty of negligence directly contributing to said injury, and provided further that the city had notice of the unsafe condition of the sidewalk in question at the time of the injury."

It is the last sentence of the instruction that is objected to. This expression, if taken alone, would undoubtedly be erroneous. Notice to the city at the time of

the injury would not be sufficient. There should be such notice as would have given the city opportunity to repair the defect before the injury occurred. However, the language complained of is substantially derived from the second instruction requested by the defendant. It appears that the defendant's attorneys, as well as the court, assumed that the matter of notice to the city had been so well explained to the jury as to preclude any danger of their being misled in that regard. In stating the material matters to be proved by the plaintiff by a preponderance of the evidence in instruction No. 4, given by the court, the jury were told that the plaintiff must establish "that the defendant had notice of such defective condition of said sidewalk in time to have remedied the defect before the accident occurred." The jury must have understood from the instructions taken together that the object of the notice to the city was to give opportunity to repair the defect, and it is wholly improbable that the jury were misled as to the notice réquired. Furthermore, the evidence on this point was so strong as to admit of no other finding than that the city authorities had notice of the condition of this walk long before the accident occurred. The defendant therefore could not be prejudiced by any instructions the court might give upon this point.

5. The next complaint is as to the rulings of the court admitting evidence of damages. It is said in the brief that the court ought not to have allowed evidence of plans which the plaintiff and his mother had made in regard to his education and in regard to going into business to provide money to pay for his expenses in school, and we find that the plaintiff's attorney inquired of the plaintiff when he was upon the witness stand in regard to these matters. He asked the plaintiff these questions: "State whether or not your attending school for this period was the part of any of the plans of your mother extending beyond the period of 21?" "State what the general plans with respect to your mother and yourself were of which that you have detailed was a part?" Both of which were

objected to by the defendant and excluded by the court. Afterwards he was asked in regard to the expenses of his schooling by the year, and similar matters, to which questions and answers no objection was .interposed. Later on in the record there appear some questions and answers which we are unable to construe. The record states that it was a cross-examination by the defendant's attorney and that the defendant objected to the questions. From these questions and answers it would appear that the plaintiff's mother had not formulated any definite plans, but that she.expected later on to keep boarders, and, as stated by the witness, "it was simply a plan to help earn the means of completing your (my) education." He also stated the amount of his tuition at the medical school, and the cost of his board and room and other expenses yearly. The record recites that all of these questions were asked by defendant's attorney, and that some of them were objected to by the defendant's attorney, and others by the plaintiff's attorney, but the principal questions calling for the evidence that is especially objected to in the brief were without objection by any one. We do not find that the record presents this question as it is discussed in the brief.

6. A witness was examined with a view of locating a particular point in this walk which was defective. It is complained that no foundation was laid for this testimony, but this objection is unavailing because under the issues as they were tried it was competent to show the condition of this walk at all points between Forty-second and Forty-third streets.

7. The court instructed the jury fully as to the measure of damages, and in doing so said: "You will assess the amount of the recovery at such sum as you find from the•evidence will compensate the said Charles Nelson Eddy for the pecuniary loss he has sustained by reason of the death of his mother. * * * You are not permitted, however, to allow any damages on account of mental suffering or bereavement, or as a solace on ac-

count of such death, as the law recognizes only pecuniary loss; nor are you permitted to allow any damages by way of vindictive or punitive damages. You should consider the relation of the parties, the earning capacity of the mother, her disposition to support her son, the probability or improbability of her continuing to do so, the loss of companionship and advice, in so far as you find from the evidence such elements to be of a pecuniary loss to said Charles Nelson Eddy." The complaint is that this instruction allowed the plaintiff to recover for the loss of the companionship of his mother, but the instruction appears to be well guarded in that respect. The jury are told that they are not to allow damages for the loss of the solace of his mother's companionship, but so far as the companionship and advice of his mother are of a pecuniary value they may take that into consideration; and we think that under the evidence in this case this cannot be said to be prejudicially erroneous.

Not finding any error in the record prejudicial to the rights of the defendant, the judgment of the district court is

AFFIRMED.