Argued January 14, decided February 3, rehearing denied April 7, 1914.

## McFARLAND v. OREGON ELECTRIC RY. CO.

(138 Pac. 458.)

**Exceptions, Bill of—Requisites in General.**

1. A formal statement in typewriting of the exceptions taken during the trial of the case to the rulings and instructions, comprising 23 pages, certified by the judge in the usual manner, attached to an exhibit containing all the evidence, and a statement that the bill of exceptions was settled and allowed at a certain date, complies with the rules of the Supreme Court.

**Exceptions, Bill of—Requisites—Transcript of Testimony.**

2. A transcript certified to be a full, true and impartial transcript of the stenographer's notes, and to constitute all of the testimony offered on the hearing, to the inside of the front cover of which is riveted the bill of exceptions, is sufficiently identified and attached to the bill of exceptions to make it a part thereof.

**Appeal and Error—Record—Scope and Contents—Exhibits.**

3. Blue-prints marked "Defendant's Exhibit," and numbered, bearing no indication that they were filed with the clerk of the trial court or identified as having been received in evidence, will be disregarded by the Supreme Court.

**Exceptions, Bill of—Requisites—Reference to Transcript.**

4. A reference in the bill of exceptions to the transcript of the evidence as an "abstract," not being misleading, does not affect the sufficiency of the record.

**Master and Servant—Damages—Loss of Comfort and Society.**

5. Under Employers' Liability Act (Laws 1911, p. 16) Section 1, requiring persons or corporations engaged in the manufacture, transmission, or use of electricity to use every precaution practicable for the safety of employees, and Section 4, providing that, if there shall be any loss of life by reason of the neglect of provisions of the act by any person liable thereunder, the widow, lineal heirs, or adopted children, or husband, mother or father, as the case may be, shall have a right of action, without any limit as to the amount of damages, while the beneficiary may recover any money loss, including the value of services during minority and the benefits reasonably to be expected therefrom, there can be no recovery for loss of comfort, society and protection of the decedent.

    [As to the principle that defendant is not liable for all possible consequences of wrongful act, see note in 36 Am. St. Rep. 811. As to measure of damage for causing death of human being, see note in 12 Am. St. Rep. 375.]

**Death—Actions for Causing Death—Statutory Provisions.**

6. The Employers' Liability Act (Laws 1911, p. 17) Section 4, giving a right of action for death caused by violation of the act to the widow, lineal heirs or adopted children, husband, mother or father, as the case may be, and Section 7, repealing all acts or parts of acts inconsistent therewith, does not repeal Section 34, L. O. L., authorizing a father or, in case of his death or desertion of the family, the mother to maintain an action for injury to or death of a child, and a guardian for injury to or death of his ward, or Section 380, empowering an executor or administrator to maintain an action for death caused by a negligent act or omission.

    [As to who is "dependent" within statute giving right of action for death by wrongful act to persons dependent on deceased, see note in Ann. Cas. 1912B, 733.]

**Master and Servant — Actions for Causing Death — Statutory Provisions.**

7. The Employers' Liability Act (Laws 1911, p. 17), Section 4, giving a right of action for death caused by violation of the act, is remedial, and as far as possible, ought to be construed liberally in favor of the beneficiaries.

**Death—Actions for Causing Death—Statutory Provisions.**

8. The recovery of damages for death by wrongful act exists solely by statute, and the compensation which may be recovered is limited by the enactment creating the right.

    [As to actions to recover damages for the wrongful causing of death, see notes in 48 Am. Dec. 632; 70 Am. St. Rep. 669.]

**Master and Servant—Actions for Causing Death—Persons Entitled to Sue.**

9. Employers' Liability Act (Laws 1911, p. 17), Section 4, giving a right of action for death caused by violation of the act to "the widow of the person so killed, his lineal heirs or adopted children,

or the husband, mother, or father, as the case may be," gives damages to the persons specified in the order stated, and the father of decedent cannot maintain the action where he left his mother surviving.

### Death—Persons Entitled—Statutory Provisions.

10. So much of Section 7349, L. O. L., providing for the descent and distribution of personal property is impliedly repealed as conflicts with Employers' Liability Act (Laws 1911, p. 17), Section 4, giving a right of action to the widow, etc., of a person killed by violation of the act, and Section 7, repealing all acts or parts of acts inconsistent therewith.

From Multnomah: William N. Gatens, Judge.

Department 1. Statement by Mr. Justice Moore.

This is an action by L. B. McFarland against the Oregon Electric Railway Company, a corporation, to recover $50,000 as damages, resulting from the death of his son, Neal J. McFarland, alleged to have been caused by the defendant's negligence in failing properly to guard electric wires at a substation, in consequence of which the deceased, an employee of the defendant, received a shock October 7, 1912, causing instantaneous death at the age of 19 years, 7 months, and 25 days. From a judgment in plaintiff's favor for $7,500, the defendant appeals.

REVERSED: REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Carey & Kerr, Mr. Omar C. Spencer* and *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Harrison Allen.*

For respondent there was a brief with oral arguments by *Mr. Will R. King* and *Mr. Lotus L. Langley.*

Mr. Justice Moore delivered the opinion of the court.

1. As a preliminary matter it is maintained by plaintiff's counsel that a review of the errors attempted to be assigned should not be undertaken. The formal statement in typewriting of the exceptions taken by

defendant's counsel during the trial of the cause to the rulings and instructions of the court, comprising 23 pages, is certified to by the judge in the usual manner, and it is further attested that Exhibit "A" contains all the testimony and evidence offered, together with the instructions given and refused, and that the bill of exceptions was settled and allowed August 27, 1913. The bill was filed with the clerk of the lower court the day it was approved. It contains a statement as follows: "Thereupon L. B. McFarland, plaintiff, was called as a witness in his own behalf, and, after having been duly sworn, testified in support of the allegations of the complaint as indicated and set out on pages 92 to 103, inclusive, in the said abstract of testimony hereto attached and marked Exhibit 'A'; the portion of the testimony of said witness to which attention is particularly drawn being as follows"— setting forth about 2½ pages of the part of the sworn statements of that witness.

2. The bill of exceptions is riveted to the inside of the front cover of what purports to be a transcript of the testimony, and copies of the instructions given, and those requested by the respective parties. A certificate appended to the transcript containing the title of the court and cause reads:

"State of Oregon,
    County of Multnomah—ss:
    "I, A. M. Butler, do hereby certify that, at the hearing and trial of the above-entitled cause, I personally took in shorthand the foregoing testimony, after which said shorthand notes were transcribed by me and under my direction, and that the foregoing 225 typewritten pages is a full, true, and impartial transcript of my said shorthand notes, which constitute all the testimony offered on said hearing. In witness whereof, I have hereunto set my hand at Portland, Oregon, this 27th day of July, 1913.
                "[Signed] A. M. Butler."

3. There have been sent up blue-prints marked ''Defendant's Exhibit,'' and numbered 2, 3, 4, 5, 6, 8, 9, 10, 11, and 12, respectively; each representing sections of the defendant's substation at Moffat, Oregon, where the decedent sustained the injury causing his death. None of these plats indicates that it had been filed with the clerk of the trial court, or that it was identified as having been received in evidence, and for that reason they will be disregarded.

It further appears that copies of the judgment, notice of appeal and undertaking therefor, were filed before the bill of exceptions was settled. This often occurs when a transcript of the testimony is required, and time is usually allowed by the trial court to enable the reporter to transcribe his notes.

4. The bill of exceptions herein strictly complies with the rules of our court, and the transcript of the testimony is sufficiently identified and attached to the bill so as to make it a part thereof. It will be remembered that the bill of exceptions, referring to a transcript of the testimony, improperly designates it as an ''abstract''; but, as no person could have been deceived by the use of such word, the record brought up is ample.

5. An exception having been taken by the defendant's counsel to a part of the court's instruction, it is contended that, in referring to the Employer's Liability Act (Laws Or. 1911, p. 16), an error was committed in charging the jury as follows:

''Under this statute the damages recoverable include not only the pecuniary loss which the person bringing the action has sustained by reason of the death of the person killed, but include comfort, society, and protection of the deceased.''

The act referred to, as far as material herein, provides generally that all corporations or persons en-

gaged in the manufacture, transmission, or use of electricity shall use every device, care and precaution which it is practicable to employ for the protection and safety of life and limb of employees: Section 1. "If there shall be any loss of life by reason of the neglects or failures of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of .action, without any limit as to the amount of damages which may be awarded": Section 4. "All acts· and parts of acts inconsistent herewith are hereby repealed": Section 7.

This action is founded upon the provisions of the statute mentioned, and the question to be considered is whether or not the loss of the society of the person killed by the negligent act or omission of another constitutes an element for which damages may be awarded. In the year 1862 the legislative assembly enacted a code, a clause of which is now incorporated in Lord's Oregon Laws as Section 34, authorizing a father or, in case of his death or desertion of the family, the mother to maintain an action to recover damages for injury to or the death of a child, and a guardian for the death of or injury to his ward. At the same time what is now Section 380, L. O. L., was also passed, empowering an executor or administrator to maintain an action to recover damages for the death of a person caused by the negligent act or omission of another, but limiting an exercise of the right to two years after the hurt, and providing that the damages, if any are recovered, are to be administered as other personal property of a deceased person.

6, 7. The qualified electors of Oregon, on November 8, 1910, exercising the initiative power reserved

by the organic law of the state, enacted the Employers' Liability Act, evidently to simplify the procedure prescribed by Sections 34 and 380, L. O. L., and to avoid the expense incident to an administration upon the estate of a person whose death was occasioned by the wrongful act or neglect of another. It was also manifestly intended by the passage of Section 4 of the act in question to set apart, as exempt from attachment and execution, and to vest in the persons named in the statute in the order specified as entitled thereto, the damages that might be recovered for the death of a person, in an action brought for that purpose. This act does not repeal Sections 34 and 380, L. O. L.: *Statts* v. *Twohy Bros. Co.,* 61 Or. 602 (123 Pac. 909). It is an additional enactment upon the subject, and, having been designed to enable the persons sustaining the greatest loss by the untimely death of their natural or legal protector, the statute is remedial, and, as far as possible, ought to be liberally construed in favor of the beneficiaries: *Baltimore & Ohio R. R. Co.* v. *Wightman,* 29 Gratt. (Va.) 431, 444 (26 Am. Rep. 384).

8. At common law the right of action for an injury to the person abates upon the death of the individual hurt. The recovery of damages for such an injury exists solely by statute, and the pecuniary compensation or indemnity which may be recovered is limited by the enactment creating the right: *McKay* v. *Dredging Co.,* 92 Me. 454, 458 (43 Atl. 29). For any money loss thus sustained the statute makes provision for its recovery, which damages include the value of the services of the deceased during his minority, and also the benefits reasonably to be expected by the person entitled to such services, if the injured person had lived: *Bond* v. *United Railroads,* 159 Cal. 270 (113 Pac. 366, Ann. Cas. 1912C, 50, 65). In a note to that case it is said:

"The loss of the society of the child is not of itself an element which the jury may consider in determining the amount of the plaintiff's damages"—citing several decisions hereinafter reviewed. It is further observed: "But the jury may consider, as an element affecting the pecuniary value of the services of the deceased child to the plaintiff, the fact that the plaintiff has been deprived of the comfort, society, and protection of the child."

In *Matthews* v. *Warner's Admr.*, 29 Gratt. (Va.) 570, 577 (26 Am. Rep. 396), under a statute of Virginia authorizing the maintenance of a suit to recover for a personal injury, and providing that "the jury in any such action may award such damages as to it may seem fair and just," it was held that punitive and exemplary damages might be given. The conclusion was not concurred in by one of the justices; but he did not write an opinion expressing his dissent. That action was founded on an injury resulting from the death of a person under such circumstances as would have constituted a felony, and the decision illustrates the maxim "that hard cases make bad law."

In *B. & O. R. R. Co.* v. *Noell's Admr.*, 32 Gratt. (Va.) 394, 400, the jury were told that, in ascertaining the damages sustained by the death of a son, the mother was entitled, as a component of the injury inflicted, to "compensation for the loss of his care, attention, and society," and, in adhering to the rule announced in the preceding case, it was determined that the instruction was a proper interpretation of the statute referred to.

In *Beeson* v. *Green Mt. G. M. Co.*, 57 Cal. 20, 39, the jury were informed that damages for the loss of the society of a person killed by the alleged negligence of another might be awarded, and it was ruled that, since the statute under which the action was brought provided that "such damages may be given as under all

the circumstances of the case may be just,'' the instruction challenged was not erroneous: citing *Matthews* v. *Warner,* 29 Gratt. (Va.) 570 (26 Am. Rep. 396); *B. & O. R. R. Co.* v. *Noell,* 32 Gratt. (Va.) 394.

In *Munro* v. *Dredging etc. Co.,* 84 Cal. 515, 525 (24 Pac. 303, 305, 18 Am. St. Rep. 248), the jury were instructed that, in addition to the pecuniary loss sustained in consequence of the death of a son, they should take into consideration, in assessing the damage, the sorrow, grief and mental suffering occasioned by his death to his mother, together with the loss, if any, sustained by her in being deprived of the comfort, society, support and protection of the deceased. In reversing a judgment rendered in plaintiff's favor, it was held that the sorrow, grief and mental suffering of a surviving relative were not included in the circumstances to be considered under the California statute referred to, and that no damages could be allowed therefor. In deciding the case, Mr. Justice Thornton, speaking for the majority of the court, says:

''In allowing the jury to take into consideration the loss of the comfort, society, and protection of the deceased, we think we have gone far enough; but this, we think, should be allowed in the case of a wife, as in Beeson's case, or a mother.''

To this conclusion, Mr. Chief Justice Beatty dissented, but wrote no opinion expressing his views.

In *Holt* v. *Spokane etc. Ry. Co.,* 3 Idaho (Hasb.), 703, 712 (35 Pac. 39, 42), the jury were told that, if they should find in favor of the plaintiff, such damages might be awarded ''as under the circumstances might be just,'' and that they might take into consideration the relation proved to have existed between the deceased and the plaintiff, and also the injury, if any, sustained by the latter in the loss of his child's society. It was ruled that, since the words last quoted were

substantially an excerpt from a section of the statute of Idaho, no error was committed in so charging the jury; the court saying:

"The instruction under consideration is substantially the same, in effect, as one considered in *Beeson* v. *Green Mountain Min. Co.,* 57 Cal. 20. That was an action brought by a widow for damages for the death of her husband; and the court held, that under Section 377 of the Code of Civil Procedure of California, which is identical with Section 4100 of the Revised Statutes of Idaho, it was not error to instruct the jury that, among other things, in awarding damages, they might take into consideration 'the relation proved as existing between plaintiff and deceased at the time of his death, and the injury, if any, sustained by her in the loss of his society.' "

The California rule was subsequently followed by the Supreme Court of Idaho in a very able opinion by Mr. Chief Justice Ailshie: *Anderson* v. *Great Northern Ry. Co.,* 15 Idaho, 513 (99 Pac. 91).

In *Bourg* v. *Brownell-Drews Lumber Co.,* 120 La. 1010, 1021 (45 South. 972, 976, 124 Am. St. Rep. 448), under a clause of the Civil Code providing that "every act whatsoever of a man that causes damage to another obliges him by whose fault it happened to repair it," it was held that sorrow caused by the death of a son and the deprivation of the child's society constituted elements of damage that might be recovered in an action brought for that purpose.

In *Sharp* v. *National Biscuit Co.,* 179 Mo. 553, 560 (78 S. W. 787, 789), under a statute providing that "the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful

act, neglect or default,'' it was said:  '' 'The neces-
sary injury,' ·referred to in the statute, may or may
not include the net loss of services; but it also covers
other injuries besides loss of services. It includes
loss of comfort, society, and love of the child.''

In *Wood* v. *City of Omaha,* 87 Neb. 213, 220 (127
N. W. 174, 176), the court, in speaking of a son, say:

''The jury are told that they are not to allow dam-
ages for the loss of the solace of his mother's com-
panionship, but, so far as the companionship and ad-
vice of his mother are of a pecuniary value, they may
take that into consideration; and we think that under
the evidence in this case this cannot be said to be pre-
judicially erroneous.''

In that case no reference is made to the statute upon
which the action is based.

In *Webb* v. *Denver & R. G. W. Ry. Co.,* 7 Utah, 17, 20
(24 Pac. 616, 617), under a statute of Utah authorizing
a recovery of damages for the death of a person, and
providing that, in an action therefor, ''such damages
may be given as under all the circumstances of the
case may be just,'' the jury were told, in an action
by a mother for the death of her son, that, in assessing
the plaintiff's damages, they might consider, not only
the pecuniary value of his services had he lived, but
also the mental pain and suffering caused by his death;
and it was held that the instruction was erroneous.

In *Wells* v. *Denver & R. G. W. Ry. Co.,* 7 Utah, 482
(27 Pac. 688), the Supreme Court of Utah held that a
charge permitting the jury, in estimating damages for
the death of a person, to include compensation to the
widow and daughter of the deceased for the loss of
companionship was not subject to the objection, on
the ground that mental suffering might be embraced in
the instruction, when the court immediately thereafter
told the jury not to allow for such pain of mind.

In the foregoing cases, which include all the decisions that have been called to our attention, the statutes of the several states mentioned, providing for the recovery of damages resulting from the death of a person caused by the act or omission of another, were held to be sufficiently comprehensive to include the loss of society of the deceased. Section 4 of the Employers' Liability Act of Oregon does not, like the enactment of California, provide that in this class of actions "such damages may be given as under all the circumstances of the case may be just." In the absence of a statute which, either expressly or by reasonable interpretation, authorizes a recovery for the loss of society, we do not believe that damages therefor can be obtained by. course of law: 8 Am. & Eng. Ency. Law (2 ed.), 908.

It will be remembered that in the note to *Bond* v. *United Railroads,* Ann. Cas. 1912C, 65, it is remarked: "The loss of the society of the child is not of itself an element which the jury may consider in determining the amount of the plaintiff's damages." The phrase "of itself" as thus used would seem to create the inference that the loss of the society of a child, if connected with other grounds of damages, formed an element thereof. The case of *Wales* v. *Pacific Elec. Motor Co.,* 130 Cal. 521, 524 (62 Pac. 932, 1120), cited in the note, sustains this doctrine. In that case, however, Mr. Chief Justice Beatty dissented, on the ground that the rule adopted in the case of *Beeson* v. *Green Mountain Min. Co.,* 57 Cal. 20 was controlling. If the statute of California is broad enough to permit a recovery of damages for the loss of society, it would seem sufficiently extensive to authorize a recovery for sorrow, grief and mental suffering, and that the dissent of the Chief Justice presented the better reasoning.

Omitting the words "of itself" in the note to the case referred to, the following decisions there cited support the legal principle announced: *Hall* v. *Galveston etc. R. Co.* (C. C.), 39 Fed. 18, 21; *Little Rock etc. R. Co.* v. *Barker,* 33 Ark. 350 (34 Am. Rep. 44, 48); *McKay* v. *New England Dredging Co.,* 92 Me. 454, 458 (43 Atl. 29); *Telfer* v. *Northern R. Co.,* 30 N. J. Law, 188, 210; *Caldwell* v. *Brown,* 53 Pa. 453, 459; *Schnable* v. *Providence Public Market,* 24 R. I. 477, 478 (53 Atl. 634); *Taylor etc. R. Co.* v. *Warner,* 84 Tex. 122, 125 (19 S. W. 449, 20 S. W. 823).

We conclude that the insertion of the phrase "of itself" in the note in question was inadvertent, and shows that mistakes will occur in the very valuable annotations to the series of reports mentioned, though this is the first error of its kind we have discovered.

Under a statute like Section 4 of the Employers' Liability Act of Oregon, which creates a new cause of action, and does not revive a right, the rule is almost universal that the measure of the recovery in case of death is the pecuniary injury sustained, and that loss of society of the deceased does not constitute an element of the damages: 13 Cyc. 371; 2 Sedgwick, Damages (9 ed.), § 573a; 3 Shearman & Red., Neg. (6 ed.), §§ 769, 773; Tiffany, Death by Wrongful Act, § 154.

We conclude, therefore, that an error was committed in charging the jury that the damages for the loss of the society of the deceased could be recovered.

9, 10. In view of the conclusion thus reached, it is deemed proper to consider another question that is not assigned as error: The complaint averred "that plaintiff is the father of Neal J. McFarland, deceased, and his sole heir at law." The answer challenges this statement as follows:

"Defendant alleges that it has no knowledge or information sufficient to form a belief as to the relation of the plaintiff to said Neal J. McFarland."

At the trial Anna L. McFarland, the mother of the deceased, in answer to the direction, "State what contributions, if any, Neal had been making to the support of the family before his death," replied: "Twenty dollars was the least; it went according to his salary; at the time of his death he was giving me $30. Q. What do you mean, a month? A. Yes; a month."

The plaintiff testified that he resided in Tillamook County, Oregon; that he received as wages $40 and $45 a month; that his wife lived in the City of Portland, and in reply to the question, "How long since you lived at home?" answered: "It has been about five years. * * Q. Did you ever send any of your money to your family? A. Yes, sir. Q. How much did you send? A. All I could spare, after paying interest, taxes, and incidental expenses." He further said: "I was paying interest and taxes on six lots in Mt. Tabot, and it amounted to about $25 a month—and insurance."

It will be kept in mind that Section 4 of the statute under consideration provides that, if there shall be any loss of life "under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded," and that Section 7 of the enactment reads: "All acts or parts of acts inconsistent herewith are hereby repealed." It is believed that, when these sections are construed together, the damages that are recovered in the action for the loss of life of a person killed by the act or omission of another is by Section 4 of the enactment given to the person or persons there specified in the order stated; that such beneficiaries "as the case may be" are the only persons who can maintain an action for the injury sustained; and that

so much of Section 7349, L. O. L., providing for the
descent and distribution of personal property of a
decedent, as conflicts with the dispensation of such
damages to the person or persons thus declared to be
entitled thereto is impliedly repealed.

Neal J. McFarland having died unmarried, with-
out lineal heirs or adopted children, but leaving a
mother surviving, she is the sole beneficiary of any
sum that may be recovered as damages resulting from
his death, to the exclusion of his father, who, though
entitled as sole heir to all other property of which
his son died seised or possessed, has no interest in or
claim to the damages for the death of the son.

Such being the case, the judgment should be re-
versed, and the action dismissed, without prejudice
to the right of the mother, if now living, to institute
an action to recover the damages to which she alone
is entitled, and it is so ordered.

REVERSED AND DISMISSED: REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT
and MR. JUSTICE RAMSEY concur.