### CROWN WILLAMETTE PAPER CO. v. NEWPORT.

(Circuit Court of Appeals, Ninth Circuit. August 4, 1919.)

#### No. 3282.

1. DEATH ⊂⇒31(6)—RIGHT OF ACTION FOR WRONGFUL DEATH—SURVIVING HUSBAND—CONSTRUCTION OF STATUTE.

Under Laws Or. 1911, p. 17, § 4, which in case of death by wrongful act gives a right of action to "the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother or father, as the case may be," the husband of a woman so killed *held* to have the right of action, although she left children by a former marriage.

2. MASTER AND SERVANT ⊂⇒101, 102(8)—DUTY OF MASTER—SAFE PLACE TO WORK.

Under Employers' Liability Act Or. § 1, providing that employers responsible for work involving risk or danger to employés shall use every care and precaution for the protection and safety of life and limb, it was the duty of a contractor, employing a woman to cook in a tent in camp near where it was conducting blasting operations, to see that she had a safe place to work, having in consideration the circumstances and surroundings.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Action at law by William Newport against the Crown Willamette Paper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William Newport, plaintiff below and defendant in error here, recovered verdict and judgment for damages on account of the injury done to his wife, Gertrude; the injuries resulting in her death. The facts are substantially these:

Mrs. Newport was employed by the paper company, plaintiff in error here, defendant below, as a cook in a tent railway construction camp in Oregon. The cook tent was on the side of a mountain stream opposite to where the

roadbed was being cleared. There had been considerable blasting done by the paper company, and no damage to those in the tents had resulted. One day in December, 1917, the superintendent who had charge of the blasting went away and put another man in charge. Opposite the cook tent and on the side of the hill, about 175 yards away, the man in charge, wishing to blast two stumps, put 35 sticks of giant powder, 20 per cent. dynamite, underneath one stump, and 15 sticks under another one about 15 feet away. Mrs. Newport was serving meals to two employés of the paper company, when another employé told her and the others in the tent where she was that a blast was to be fired, and a notice by a call of "Fire!" was given. Mr. Newport, together with a little boy, the son of his wife, left the tent, not through fear, but in order to watch the effect of the blast; but Mrs. Newport and the others remained in the tent. A very few moments after the notice was given the two blasts exploded, and a large piece of wood, weighing about 120 pounds, and approximately 4 by 6 feet in size, was hurled violently through the canvas side of the tent and hit Mrs. Newport on the head and killed her. She was a healthy young woman of industrious habits, and at the time of her death was earning $90 a month as a cook. There was testimony that the charge was put in on the hill side of the stump, opposite the side which faced the cook tent, and that because of this the stump would naturally, when exploded, be driven toward the cook tent. There were a few small alder trees between the cook tent and the stumps which were exploded; but they afforded no protection to the tents.

The action is brought by William Newport in his own behalf. Mrs. Newport had previously been married, and was the mother of three children by the prior marriage, but had no children by William Newport. The action is based upon two statutes of the state of Oregon—chapter 3, General Laws of Oregon 1911, page 16, and chapter 112, General Laws of Oregon 1913, page 194. Chapter 3, called the Employers' Liability Act, provides that owners, contractors, and subcontractors, and other persons having charge of or responsible for any work involving a risk or danger to employés or to the public, shall use every care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity of preserving the efficiency of the appliances used. Section 4 of the act reads as follows: "If there shall be any loss of life by reason of the neglects or failures or violations of the provisions of this act by any owner, contractor, or subcontractor, or any person liable under the provisions of this act, the widow of the person so killed, his lineal heirs or adopted children, or the husband, mother, or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded." Section 5 provides that in actions brought to recover for injuries suffered by an employé, the negligence of a fellow servant shall not be a defense where the injury shall be caused or contributed to by any of the following causes, namely: " * * * The neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control; * * * incompetence or negligence of any person in charge of, or directing particular work in which the employé was engaged at the time of the injury or death; the incompetence or negligence of any person to whose orders the employé was bound to conform and did conform and by reason of his having conformed thereto the injury or death resulted; the act of any fellow servant done in obedience to the rules, instructions or orders given by the employer or any other person who has authority to direct the doing of said act." Section 6 provides that the contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of damage.

Griffith, Leiter & Allen, Chester A. Sheppard, and Bert W. Henry, all of Portland, Or., for plaintiff in error.

G. C. Fulton and A. C. Fulton, both of Astoria, Or., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] It is argued by plaintiff in error that the husband is not a proper party to sue under the statute hereinbefore cited, and the case of McFarland v. Oregon Electric Railway, 70 Or. 27, 138 Pac. 458, Ann. Cas. 1916B, 527, is cited. That was an action by McFarland against the railway company to recover damages resulting from the death of his son. The Supreme Court, through Justice Moore, referred to sections of the statute hereinbefore cited, and said:

"It is believed that, when these sections are construed together, the damages that are recovered in the action for the loss of life of a person killed by the act or omission of another is by section 4 of the enactment given to the person or persons there specified in the order stated; that such beneficiaries 'as the case may be' are the only persons who can maintain an action for the injury sustained; and that so much of section 7349, L. O. L., providing for the descent and distribution of personal property of a decedent, as conflicts with the dispensation of such damages to the person or persons thus declared to be entitled thereto, is impliedly repealed."

The decision was that, the son having died unmarried and without lineal heirs or adopted children, but leaving the mother surviving, she was the sole beneficiary of any sum that might be recovered as damages resulting from his death, to the exclusion of his father, who, though entitled as sole heir to all other property of which his son died seized or possessed, had no interest in or claim to the damages by the death of the son. The case is not directly in point.

If we follow the literal phraseology of the statute, in the present case there is no widow and no male who has left lineal heirs or adopted children. The husband, therefore, would be the person in whom there is a right of action. But the learned judge of the District Court adopted a broader construction, by regarding the word "his" as used rather in a generic sense, and as including both wife and husband, both sexes, and he held that it was not the intent of the act to subrogate the rights of the husband to the heirs and personal representatives. In making the ruling that the action would lie, the court said:

"I think the proper construction of the act would be to read 'lineal heirs or adopted children' after the word 'husband,' so that a proper construction would read this way: The widow of the person so killed, his lineal heirs or adopted children, mother, or father."

It is certainly reasonable to say that the Legislature intended to provide that, in case of the death of the father, his widow or lineal heirs or adopted children would have a right of action; and there is strong ground for the argument that it was not the intent of the Legislature that in case of the death of the mother the words of the statute, "his lineal heirs or adopted children," should apply. By a construction which counsel for plaintiff in error urges, the only persons who could maintain an action, in the event the husband was still living, would be the lineal heirs of the deceased mother; while by giving to the statute the construction adopted by the lower court, the right of action is in the husband or the lineal heirs or the adopted children of the deceased mother. We believe the action was properly brought.

It is said that the court, in charging the jury upon the measure of damages, erred by stating that the husband was entitled to recover "such damages as he has suffered and as the estate of his wife had suffered by reason of her death." The court told the jury that they could consider the expectancy of life of Mrs. Newport, and what assistance the deceased would have been to the husband in the accumulation of an estate during the expectancy of life, what wages she was earning and able to earn, and the state of her health, to the end that the jury could determine how much value in money, as near as the jury could arrive at it, would be added to the estate of the husband if the wife had lived the whole time of her expectancy. Plaintiff in error argues that under this instruction the loss of the society of the wife was considered an element of damage. There is no room for the contention. The charge limited the question for consideration to the measure of damages arising out of the element of wages and value in money that might have been added to the estate of the husband if the wife had lived. Furthermore, in the exception taken the only point saved was based upon the ground of an alleged lack of evidence of any character that the deceased "ever in any way contributed anything to this plaintiff, that he was dependent upon her in any respect in so far as the Employers' Liability Act is a dependency statute, that he has no right of recovery at all, and therefore the measure of damages is erroneous."

[2] It is said that the court erred in charging the jury that it was the duty of the employing company "to provide deceased with a safe place in which to work, having in consideration all the circumstances and conditions there." The court added:

"It was the duty of the defendant to see that the deceased was provided with a safe place in which to do her work. You will remember that she was employed to cook in that tent, and it was the duty of the defendant to see that the tent was a safe place in which to do her work, considering the facts which have been disclosed here, that other employés were at that time blowing these stumps," etc.

The particular criticism is that, in the charge that it was the duty of the paper company to provide Mrs. Newport with a safe place in which to work, the court used words equivalent to the statement that the employer was an insurer of the safety of the employé, and that such is not the law as laid down by the terms of the Employers' Liability Act, § 1, heretofore referred to. Under the Employers' Liability Act in Oregon, the company was obliged to use every care and precaution which it was practicable to use for the protection and safety of life and limb, limited only by the necessity of preserving the efficiency of the appliances and devices used. It was clearly the duty of the company to see that the cook had a safe place in which to work, having in consideration all the circumstances and conditions under which she was obliged to do her work. The facts disclosed show that stumps were being blown by dynamite and that great peril surrounded her in her occupation. These matters were all for consideration by the jury, and the court properly charged that it was the duty of the defendant to consider them and to provide a safe place, after giving due consideration to them. The language, when all considered together,

is not susceptible of the meaning that the company was an insurer of the safety of the employé. Sloss-Sheffield Steel & Iron Co. v. Russel, 247 Fed. 289, 159 C. C. A. 383.

Other errors assigned go to points of less importance than those which we have mentioned. We find none well founded.

The judgment is affirmed.